Ranney, J.
The bill in this caso is prosecuted to compel the defendants, Johnston and wife, to surrender to the complainants, the heirs of William Price, late of Richmond, Virginia, the legal title to one thousand acres of land, included in survey No. 10,030 in the Virginia military district. Price died in 1808, intestate, leaving a widow and five children, all minors. At the time of his death, he was the owner of a large quantity of land in this district; some in his own right exclusively, and some in company with one Robert Means; and held partly by warrant, partly by entry and survey, and partly by patent. Means died in the same year, leaving a will; and some time after his death his executor instituted proceedings for partition in one of the courts of Virginia, which resulted in aparting to the heirs of Price 15,890 acres, including the lands in controversy. So far as this tract is concerned, neither the entry ■or survey had been made at the death of Means. He held the warrant at that time, and the entry and survey were afterwards made in his name.
*337 The estate of Price being greatly embarrassed with debts, certain creditors of his, in the year 1821, filed in the superior court of Yirginia their bill in chancery praying a sale of these lands in the' State of Ohio, for the purpose of paying the debts of the estate. The administrator, widow, and heirs of Price were made parties defendant. One of these heirs, Wm. D. Price, had, at that time, arrived at majority ; the others were minors. Such proceedings wereafterwards had that, in November of the same year, a decree by consent for the sale of the lands was taken ; the minors consenting by their guardians. At the sale afterwards made in pursuance of the-decree, Joseph Carter became the purchaser of the tract in question for the sum of $1,500 ; paid the purchase money; and on the 22nd of December, 1853, obtained a patent for the land. In 1827 he conveyed to William Duval, and Duval, *in 1828, conveyed to Samuel and David Dunn, who died, leaving the defendant, Julia, now intermarried with William E. Johnston, their sole heir at law.
Upon this state of the facts, it is claimed for the complainants that they were the equitable owners of this tract of land, and that the judicial proceedings in Yirginia resulting in its sale are void, and have in no way affected their interests, and consequently they have a right to demand the legal title from Johnston and wife.
Eor them it is denied that the complainants ever had an equitable title to this property; and it is insisted that the entry and survey made after the death of Means in his name are absolute nullities; but, in any event, it is further claimed, that the ancestors-of the defendant, Julia, must be regarded as innocent purchasers without notice, and protected as such. To this, it is replied, that, even if the entry was void, she can not take advantage of it, as she claims under the same entry, aud procured the legal title by virtue of it; and that her ancestors were not purchasers without notice, as the patent refers to the void judicial proceedings by which the-warrant was assigned.
That the decree of the Yirginia court was entirely inoperative to transfer or affect any interest, either legal or equitable, that the complainants had to lands lying in Ohio, is a proposition too clear for argument. Salmon v. Price, 13 Ohio, 368. Lessee of Blake v. Davis, 20 Ohio, 231.
On the other hand, it is equally clear that the holder of a warrant, before location or entry, has no such specific equity to any particular tract of land as a court can notice or enforce. As stated *338 by Chief Justice Marshall, in Hoofnagle v. Anderson, 7 Wheat. 217: “ The entry, and not the warrant, has always been considered as the commencement of title and by Chief Justice Hitchcock, in Lessee of Latham v. Oppy, 18 Ohio, 110: “ The’equitable interest of the locator commences with the entry, his equity is merged in the’ legal title when the patent emanates.”
*These propositions, being undoubted, bring us to the inquiry: Had these complainants, before or at the time the patent issued under which the defendants claim, the equitable title to this land? The solution of the question thus stated must depend ■entirely upon the answer to be given to another, viz.: Did the ■entry and survey made in the name of Means, after his death, appropriate the land, or was it a nullity?
The complainant’s counsel rely upon the proviso in the first section of the act of Congress, of March 2,1807 (2 U. S. Stat. at Large, ■424), to extend the time for locating Virginia military warrants, etc., •and insist that it confirms and makes valid all such entries. It reads thus: “ Provided, that no locations, as aforesaid, within the .above-mentioned tract shall, after the passing of this act, be made •on tracts of land for which patents had previously been issued, or which had been previously surveyed, and any patent which may nevertheless be obtained for land located contrary to the provisions ■ of this section shall be considered null and void.”
It is not doubted by them that, independent of this proviso, isuch an entry would be void ; and I shall therefore confine myself to an examination of such decisions as have involved its construc■tion.
The question in this state was first raised in the case of the Lessee of Wallace v. Saunders, 7 Ohio, pt. 1, 174. It was there expressly •decided that an entry made in the name of a dead man was void, and not helped by the proviso in the act of 1807. The court say: “It was was intended to protect such surveys as were defective, and which might be avoided for irregularity. But it could not have been intended, as we apprehend, for the protection of such surveys as were absolutely void, or, in other words, such surveys as could not, at any time after they were made, be, consistently with law, carried into grants.”
This decision was followed and expressly approved in Lessee of Sullivant v. Weaver, 10 Ohio, 275, and in Lessee of Latham v. Oppy, 18 Ohio, 104.
*339 *One of the earliest cases in the supreme court of the United States, in which the construction of this proviso was drawn in question, is Jackson v. Clark, 1 Pet. 628. The question there was whether an entry and survey upon a warrant already satisfied by another location, after the land had passed into the possession of third persons, was protected against a subsequent entry. The court ¡held that it was; and in answer to the argument that the statute did not protect void surveys, Chief Justice Marshall says : “ If it be conceded that this proviso was not intended for the protection of surveys which were in themselves absolutely void, it must be admitted that it was intended to protect those which were defective, and which might be avoided for irregularity. If this effect be denied to the proviso, it becomes itself a nullity.” After stating the conclusion of the court to be that the survey, although irregular, “ was not an absolute nullity,” he adds: “ Lands surveyed are as completely withdrawn as lands patented from subsequent location.” “ It may be that the defendants may never be able to perfect their title. The land may be yet subject to the disposition of Congress. It is enough for the present case to say that, as we understand the act of Congress, it was not liable to location when the plaintiff’s entry was made.”
In the case of Galt v. Galloway, 4 Pet. 333, the question was first raised as to the effect of an entry made in the name of a deceased person; and it was there distinctly ruled that such a location was void, as any other act done in the name of a deceased person must be considered.
Two years after, in the case of McDonald’s Heirs v. Smally, 6 Pet. 261, the same question was presented and decided in the same way, and the authority of Galt v. Galloway expressly confirmed. At the same term of the court, in the case of Lindsey v. The Lessee of Miller, 6 Pet. 666, it was held that the proviso in the act of 1807 did not protect void surveys. The court say: “ There can be no doubt that Congress did not intend to protect surveys which had been irregularly made, and it is equally clear that they did not design to sanction void surveys.”
_ *The complainants’ counsel say they are free to admit that the doctóne that an entry and survey in the name of a dead man is a nullity, was for a long time countenanced by the supreme court of the United States, and followed by the courts of Ohio ; but they insist that the old cases on that subject have been silently overruled by later decisions of the same court. To prove this; they refer to *340 Galloway v. Finley, 12 Pet. 264, and McArthur’s Heirs v. Dunn’s Heirs, 7 How. 262.
The first of these cases was a bill in chancery brought by thevendee to rescind a contract of purchase with the vendors, who were heirs of Charles Bradford, the holder of a warrant for military lands, upon the ground that the vendors had no title; the entry and survey having been made, and the patent issued in the-name of Bradford, after his death. It also appeared that after the vendee had discovered this defect in the title of the vendors he had entered and surveyed the lands and obtained a'patent. Two questions arose : 1st. The rights and obligations of the parties growing out of the relation in which they stood as vendor and vendee; 2d. The effect of the proviso upon the patents of each of the parties.
Upon the first point the court held that vendor and vendee stand in the relation of landlord and tenant, in which the latter can not. disavow the title of the former; and when the vendor has been guilty of no fraud, all acts done by the vendee to perfect the title,, when in possession of the land, inure to the benefit of him under whom the possession was obtained, and through whom the knowledge that a defect in the title existed was dexúved; the vendee having only the right to be reimbursed the expenditure. That it was sufficient if the vendors could make title when the last payment fell due; and while a court of chancery would enjoin the payment of the purchase money until the ability to comply with the agreement for title was shown; yet it would give a reasonable time to procure the title, if it appeared probable, on refereixce, that it might be procured. And inasmuch as the act *of 183& had expressly confirmed to the heirs patents issued in the name of deceased persons, it appeared at the time of the hearing (1838) that the defendants had title.
The conclusion of the court upon the second point, after deciding that the statute includes void as well as irregular surveys, is. thus stated : “Congress had the power in 1807 to withhold from location any portion of the military lands; and having done so, in regard to that previously patented in the name of Chaides Bradford, the complainant, Galloway, had no right to enter the same. His location being void, it follows, the act of 20th May, 1836, vested the title to a moiety in the defendant, Finley, exempted from any influence of the entries.”
In the case of McArthur’s Heirs v. Dunn’s Heirs, the eomplain *341 ■ant’s title was derived through an entry made in the name of Means, who was dead, in 1822, a survey in 1823, and a patent issued in January, 1825. The defendants claimed title by an entry .and sui’vey made in 1824, and a patent issued in April, 1825. They insisted that the previous entry and survey in the name of Means was void, and the lands still open to subsequent Ideation. The coui-t overruled this position, and held that the subsequent conflicting entry came within the prohibition of the statute, and was therefore void..' But wc can see nothing in the decision itself, or the opinion by which it is supported, calculated or designed to question, much less to overrule the previous decisions, by which it had been settled that an entry in the name of a deceased person was void. •On the contrary, the cases of Galt v. Galloway, and McDonald’s Heirs v. Smally, are referred to as express and decisive upon that ■point. But the judge very justly remarks that that question was by no means decisive of the"question before the court; if, indeed, it was at all applicable—“ that question not involving simply the validity of an entry made in the name of a dead man, but embracing the legality of locations made since the enactment of the proviso upon lands previously patented or surveyed, without reference to .the circumstance of the death or life of those in whose names *such previous patents may have been granted or surveys made.”
And he proceeds further to say, that the natural and common meaning of the terms of the proviso “ extend to and protect alike patents, entries, and surveys, of either description, so far as this end is accomplished by preventing the possibility of conflict with locations •and patents coming into existence after its date.”
On the whole, we are of opinion, that all the decisions may be •reconciled, and the obvious import of the proviso maintained, by holding that every bona fide attempt to locate land's under a warrant by entry and survey has the effect to withdraw such lands •from subsequent location upon another warrant, whether such entry and survey is valid or void; but if void, no title or interest, cither legal or equitable, passes out of the United States. The whole remains in the government as it did before the attempt was made ;■ but it has the effect, and this only, to exclude every person except the legal holder of the warrant from encroaching upon the land, thus attempted to be appropriated, by subsequent locations. This, .in effect, establishes a pre-emption right in favor of such person,’ *342 and he may afterwards, while the title remains in the government, acquire a specific equity by a valid location, and the legal title by . patent.
To enable the government or any individual to grant any title or interest, either legal or equitable, the person designated in the conveyance must be in esse to take. The one can not lose the title or interest until the other takes it; which is impossible when the grantee is dead. We do not doubt the power of Congress to provide that such a conveyance shall inure to the benefit of the heir, as it has done in respect to patents by the act of 1836. But we can find no warrant, either in the act itself, or in the judicial expositions of it, for placing such a construction upon the proviso in the act of 1807. That such was not the understanding of Congress, is most manifest from the fact, that with the knowledge which they must be presumed- to have had, that the courts were construing' *it differently, they have again- and again renewed and extended it without altering any of its provisions; and from the-further fact, that the act of 1836, in respect to patents, would have-been useless and unmeaning if the same object had been effected, by that of 1807.
The application of these principles to the case in hand brings us: to these conclusions: Means died the owner of a warrant which gave him a right to 1,000 acres of land in the military distinct, but-before entry created no specific equity to any particular tract. This-right was devised to his executor in trust, and upon the partition it went to the heirs of Price. The attempted location in the name of Means, after his death, being void, did not appropriate the land in controversy, or create any specific equity to it; and the attempted sale of the interest of Price’s heirs being also a nullity, has not affected that interest. The right remains in the hands of their heirs exactly as at the death of Means. The government has improvidently issued a patent for this land, and have thus appropriated it; but the complainants have no right to call for the legal title thus acquired.
But it is insisted by the complainant’s counsel that the defendants should not be permitted to question the legality of the entry and survey, and the case of Galloway v. Finley is claimed to be conclusive upon this point. That case, as we have seen, is placed distinctly upon the ground that the relation of vendor and vendee, equivalent to that of landlord and tenant,.existed between the par *343 ties. Does any such relation exist here ? If so, as a matter of course, both parties are bound, or neither. If both are bound, what is the position occupied by the complainants? The land was sold and a full and fair consideration paid for it, which has gone to relieve the estate of their ancestor, and not one dollar of it has ever been refunded. With the sale confirmed, they would make a very poor showing in a court of equity. But the whole foundation upon-which the bill rests involves an utter repudiation of all connection between the parties founded upon contract. As the counsel say in another part *of their argument, the proceeding throughout as against the infant heirs was in invitum. They ask us to declare-it a nullity to all intents and purposes, and we have done so-After we have thus set them free, we can not consent to bind the defendants.
The answer of Marshall, C. J., to a similar claim, in Blight’s Lessee v. Rochester, 7 Wheat. 549, is in point and unanswerable. He says: “ If he holds under an adversary title, his right to contest that of Dunlap is admitted. If he claims under a sale from Dunlap, and Dunlap himself is compelled to aver that he does, then the plaintiffs themselves assert a title against their contract. Unless they show that it was conditional, and that the condition is broken, they can not, in the very act of disregarding it themselves, insist that it binds the defendant in good faith to acknowledge a title which has no real existence.”
Having arrived at the conclusion that the complainants never had an equitable title to the lands in controversy, which a court of equity could enforce, and that the defendants are under no disability to show the fact, it becomes unnecessary to express an opinion upon the other points of defense relied upon by them. The bill must be dismissed.

Bill dismissed.

Thurman, J., did not sit in this case.