51　169
74　403

H. M. TRUEHART AND H. B. ANDREWS v. L. H. BABCOCK.

1. CONSTRUCTION OF STATUTES — TITLED OR SURVEYED LANDS.— The act of February 5, 1850, (Paschal's Dig., art. 809,) prescribing "that no certificate of land, land warrant, or evidence of land claim of any kind whatever, shall hereafter be located upon any land here-tofore titled or surveyed within the limits of the colonies of Austin, De Witt, or De Leon," &c., protected from relocation a grant for two leagues, part of a concession of eleven leagues, made by Steven F. Austin, commissioner, December 15, 1831, no consent of the general government having been shown to the grant.

2. STATUTES IN AID OF IMPERFECT TITLES—CONSTRUCTION.—There being no exceptions in the act of the Legislature, the courts in con-struing the act will add none. The protection extends to all classes of such titled or surveyed lands, whether void or not.

APPEAL from Galveston. Tried below before the Hon. William H. Stewart.

This was an action in the ordinary form of trespass to try title, brought by appellants against appellee, to recover land in Galveston county, setting out the boundaries and claiming possession since September 1, 1873; suit filed April 24, 1875,

being the second suit, the first suit having been filed May 24, 1874.

The defendant answered not guilty; pleaded limitation of five and ten years; and possession, claiming title and paying taxes for twenty years, with suggestion of valuable improvements; that the land sued for is a part of two leagues granted by the Mexican Government, (part of a concession of eleven leagues,) by Stephen F. Austin, empressario, to Miguel Muldoon, by title dated December 15, 1831; that the land is situated in the limits of Austin's coast colony, and that by an act of February 5, 1850, the land was not open to location, and that plaintiffs' patent is null and void; that he and those under whom he claims had been in possession since January 11, 1841, cultivating, paying taxes, &c., and that they had entered into possession before February 5, 1850, as on land that had theretofore been titled and surveyed, and that on February 5, 1850, were in actual possession, claiming the same as titled and surveyed lands, with full knowledge that all title to the same had passed out of the government by the grant to Muldoon.

Plaintiffs, by supplemental petition, alleged that the land sued for was not titled and surveyed land within the meaning of the act of February 5, 1850; that the said grant to Muldoon was illegal and void, and was so considered and treated by the governments of Texas and Mexico, and is now so treated and considered by those intrusted by law with the administration of matters pertaining to the public domain; that the consent of the Federal Executive was never given to the making of said grant, and that locations upon the same were not prohibited by article 809 of Paschal's Digest, and that neither the defendant nor those under whom he claimed ever held or claimed to hold under or by virtue of said grant to Muldoon, but that defendant claimed under one Baumgarten, who claimed under a certain conditional certificate issued to one Jarboe; and defendant stipulated to

pay for the said land when he should receive a patent from the State.

The cause was submitted to the court and judgment rendered for defendant. Plaintiffs appealed.

*Joseph & Kittrell*, for appellants.

I. The location and patent of appellants was not prohibited or rendered void by the act of February 5, 1850. (Paschal's Dig., art. 809.)

1st. Because the said grant to Muldoon was never legally titled and surveyed within the meaning of said act, the same being void for want of the consent of the Federal Executive of Mexico to the making of the same.

2d. Because said act of February 5, 1850, was intended to quiet titles under grants intrinsically valid, but lacking in some technical legal requirements, and was not intended to establish or confirm grants inherently illegal and void.

3d. Because the said act was intended for the protection of colonists and those claiming under them, and only applies in favor of those who claim as or under colonists and in privity with them, and whose claims are supported by strong equities. (Paschal's Dig., art. 809; Laws of 1856, vol. 6, p. 59; Gen. Laws, vol. 4, Ex. Sess., p. 1; Summers *v.* Davis, 49 Tex., 541; Lindsey *v.* Miller, 6 Pet., 666; Jackson *v.* Clark, 1 Pet., (S. C.,) 638; McArthur's Heirs *v.* Dun's Heirs, 7 How., 262.)

II. The patent to appellants gave to them good title to the land in controversy, unless the claim of appellee was under a grant legal and valid within itself, or was supported by strong equities in his favor, arising under a grant irregular or technically defective, but intrinsically legal and valid.

Patent was issued to plaintiff upon a valid certificate, and the regularity of all conveyances is admitted. The consent of the Federal Executive of Mexico to the making of the Muldoon grant was not proved. Appellee claimed in opposition to the said grant, and looked to the State for a patent under the Jarboe certificate. (Laws of 1856, vol. 6, p. 59;

Lindsey *v.* Miller, 6 Pet., 666; Jackson *v.* Clark, 1 Pet., (S. C.,) 628.)

III. The court erred in receiving and considering in evidence the grant to Muldoon, because the same was a void grant; because appellee did not allege or prove that he claimed thereunder, or in privity with the original grantee therein; because no equities were shown to exist in favor of appellee thereunder, as a colonist or claiming under colonists; because having, by his deed, repudiated the Muldoon grant and taken in opposition thereto, looking to and stipulating for a patent from the State under the Jarboe certificate, he could not set up the Muldoon grant as against one who had obtained in due and legal form and was claiming under patent from the State. (Paschal's Dig.. art. 546; Colonization Law, 26 Tex., 689; 27 Tex., 40; Laws of 1856, vol. 6, p. 59; 7 How., 262, and authorities cited; McDonald *v.* Smalley, 6 Pet., 261; 'Shields *v.* Hunt, 45 Tex., 428; Johnson *v.* Timmons, 50 Tex., 521.)

IV. The case of Summers *v.* Davis, 49 Tex., 554, is relied upon by appellee to sustain the judgment of the court below. That is the only case in the State, within our knowledge, in which the question of the construction of the act of February 5, 1850, is involved; and we invite the court to a consideration of the decisions of the Supreme Court of the United States which are cited in that case. Before proceeding to this examination, it may not be improper to suggest that the title of the claimant under the old grant in that case was sustained without reference to the act of 1850. But the act of February 5, 1850, was held to apply to the land in controversy, and to prohibit location in the colony of De Witt upon lands that had previously been titled or surveyed. Upon this branch of the case, the decision of the court was rendered upon the authority of McArthur's Heirs *v.* Dun's Heirs, 7 How., (S. C.,) 262, and that case is cited as authority for the proposition, that if the land had been "literally titled and surveyed," location upon it was prohibited, whether

it had been surveyed and titled under a void or a valid grant. That such is the decision in McArthur *v.* Dun, and in the case of Galloway *v.* Finley, 12 Pet., 264, upon the authority of which case the former case was decided, is not denied; but the meaning and the purpose of the acts of Congress under which these decisions were made, and the local law which, in a great measure, controlled the action of the court, and the facts in each case, being closely examined, it will be found, we submit, with great deference, that they do not sustain the position that any grant, whether valid or void, "literally titled and surveyed," prohibits a second location thereon.

The acts of Congress of 1807, amended by the act of 1823, which were under consideration in the cases of McArthur *v.* Dun and Galloway *v.* Finley, were in a great measure, though not entirely, similar in their language and intent to the act of February 5, 1850; (Paschal's Dig., art. 809;) and in each of these cases, and in every other case in which an entry and location under a void grant were sustained, it will be found (1) that the claimant whose title was sustained claimed under the grant interposed in his defense, (as was the case in Summers *v.* Davis,) and (2) that his claim was supported by strong equities. It is not decided in these cases, or in either of them, that a grant that was inherently a nullity, or made improperly and without authority, could defeat a prior title made by the government under a location within the prohibited district. It was held in these cases, that though the grant, according to the strict letter of the law of the States in which the lands were located, was void, because the patentee was dead when the patent was issued, yet the title was sustained because there was every legal and proper warrant and authority for the location, and because the title inured to the benefit of the heirs of the patentee, and their equitable claims against the government prevailed over the strict letter of the law, to prevent injustice and the defeat of the intention and object of the particular statute which the court was

then construing. (Galloway *v.* Finley, 12 Pet., 264; McArthur's Heirs *v.* Dun's Heirs, 7 How., 262.)

The grants in these cases were supported by the strongest equities, were made upon legal warrants and in discharge of an equity against the government, and were only void by a strict legal technicality that did not impair that equity. (Galloway *v.* Finley, 12 Pet., 264.)

When grants were inherently nullities, and no equities intervened such as the statutes were intended to aid and uphold, the last location was held valid, though there had been an actual survey under the former entry within the prohibited district. (McDonald *v.* Smalley, 6 Pet., 261; Lindsey *v.* Miller, 6 Pet., 666.) In the last-named case, the defendant in ejectment held the elder entry and survey, but the government grantee (plaintiff in ejectment) was held to have the better title, because the defendant located his warrant improperly and without authority of law, though there had been an actual entry and survey, the court holding that the location and survey were mere nullities, and that the act did not contemplate such claims. (6 Pet., 678; 12 Pet., 299.) In this case, it was urged upon the court by the appellant that there was no distinction between void and voidable surveys, and it was replied by appellee that the act was not intended to protect that which was absolutely void. The court, sustaining the judgment of the lower court, says:

" By the act of 1807, any patent is declared to be void that shall be issued on an entry of land which had been previously patented or surveyed. This language is general, and literally applies to all surveys which had been previously made, whether made with or without authority. Could Congress have designed by this act to protect surveys which had been made without the semblance of authority? If an intruder, without a warrant, had marked boundaries in a survey, either large or small, would it be protected under the act? When the object and scope of the act are considered, and other laws which have been enacted on the same subject, and the deed

of cession is referred to, it would seem that much difficulty cannot be felt in giving a correct construction to this provision." ( 6 Pet., 675.)

And, further, the court say : " There can be no doubt that Congress did intend to protect surveys which had been irregularly made, and it is equally clear that they did not design to sanction void surveys."

Where, in Galloway *v.* Finley, it is said, " the act applies to 'void' surveys, for valid surveys did not need protection," it will be found, upon examination, that only surveys are meant that are technically void and that are supported by strong equities, and not surveys that are absolutely and inherently void from any cause.

Mr. Justice Gould, in Summers *v.* Davis, says, concerning the acts of 1850 and 1856, that they were enactments of repose and intended to quiet titles, and that they embraced those who had for many years claimed; cultivated, and used land under a title " at one time unquestionably valid." They were acts intended for the protection of colonists. The acts of Congress herein referred to were for the protection of those who held equitable claims against the government; and in the decisions under those acts, and in Summers *v.* Davis, great stress is laid upon the equitable and just intent and purpose of the law.

Calling these decisions to our aid in construing article 809 of Paschal's Digest, and the subsequent acts relating to the same subject-matter and in aid thereof, we think it may be clearly deduced, that where, in any case within the prohibited district, land is surveyed and titled under a grant legal and valid within itself, or a grant technically void or defective but intrinsically meritorious, and under which equities have arisen in favor of one who claims thereunder as a colonist or in privity with colonists and with the original grantee, a second location and patent thereon would be null and void ; otherwise it would be legal and valid, and the patentee would

take good title. (Laws of 1856, vol. 6, p. 59; Lindsey *v.* Miller, 6 Pet., 666.)

Apply these authorities to the case at bar, and what is the result?

Appellee does not claim under the Muldoon title, nor under any other title at "one time unquestionably valid." He offers in evidence a deed from one who had no title, in which deed the Muldoon grant is referred to as a "pretended claim," and in which he stipulates for title from the State as a condition precedent to payment for the land,—a condition that has never been fulfilled. He shows no privity between himself and the grantee in the Muldoon title, but repudiates it and claims in opposition to it. He does not prove, or offer to prove, that either he or those under whom he claims were colonists, or that they ever held or claimed as such. He purchased with knowledge that his grantor had no title and that he took none from him. The grant which he now interposes in his defense had been declared void as far back as 1848. (3 Tex., 321, 499.)

It follows, then, that the land in controversy had never been titled or surveyed under a grant legal and valid within itself, and hence was still part of the public domain and open to location; for if neither the Muldoon grant nor a patent from the State be effectual to convey title to it, what is its position? It is not claimed that in any other way the title has been divested out of the government and vested in any person. The land has never been "titled or surveyed" under a void or defective grant under which equities have arisen in favor of any one as a colonist, or as claiming in privity with colonists; hence no right or equity of any of that class that the statute is intended to protect was impaired by appellants' location and patent. It is, therefore, we submit, valid and effectual, giving to appellants superior title to the land sued for.

*Price & Wilson,* for appellee, cited and discussed Republic

*v.* Thorn, 3 Tex., 510; Hatch *v.* Dunn, 11 Tex., 708; Marsh *v.* Weir, 21 Tex., 106; Paschal's Dig., art. 809; Dwarris on Stat., 193; Hooper *v.* Hall, 35 Tex., 83; Summers *v.* Davis, 49 Tex., 541.

BONNER, ASSOCIATE JUSTICE.—The decision of this case depends upon the proper construction of the act of February 5, 1850, (Paschal's Dig., art. 809,) entitled "An act to prevent locations in the colonies of Austin, De Witt, and De Leon," and which reads as follows:

"That no certificate of land, land warrant, or evidence of land claim of any kind whatever, shall hereafter be located upon any land heretofore titled or surveyed within the limits of the colonies of Austin, De Witt, and De Leon, and the commissioner of the general land office is hereby prohibited from hereafter issuing a patent on any location hereafter made for any of the lands described in this act; and should any patent be hereafter issued for the same, or a part thereof, contrary to the provisions of this act, the same shall be null and void."

As held by this court in Summers *v.* Davis, 49 Tex., 541, the object of this statute, and that of the act of 1856, (General Laws, 4th Leg., adjourned session, p. 59,) was undoubtedly to quiet land titles in the colonies named, and would even include a title which, by the decree of the ayuntamiento, had been annulled, and which was "to be regarded as though it had never had an existence."

That this land had been "titled or surveyed," is not questioned; but the old grant to Miguel Muldoon is claimed to have been null and void because within the littoral leagues, and had never been approved by the Federal Executive of Mexico. The title under which plaintiff claims was subsequent to the act of February 5, 1850. The Legislature, by the express terms of this act, prohibited such subsequent locations in most emphatic language, and declared them null and void, without any limitation, exception, or reservation as

to the validity of subsisting prior grants. Should the courts ingraft exceptions upon a statute thus intended to quiet titles, they would encourage that litigation which it was the very obvious intention of the Legislature to prevent. It presents one of those cases in which the courts must await the lead of the political authority before they can act. (Hancock *v.* McKinney, 7 Tex., 457.)

The plaintiff must recover upon the strength of his own title; and as he has failed to show such legal or equitable claim as would authorize him to disturb the long-continued prior possession of the defendant, the judgment must be affirmed.

AFFIRMED.