No. 2453.

### E. S. WINSOR *v.* THOMAS O'CONNOR.

1. CONSTITUTION CONSTRUED—SURVEYS AND LOCATIONS.—Section 2 of article 14 of the State constitution provides, among other things, that "all genuine land certificates, heretofore or hereafter issued, shall be located, surveyed or patented only upon vacant and unappropriated public domain, and not upon any land titled or equitably owned under color of title from the sovereignty of the State, evidence of the appropriation which is on the county records, or in the general land office, or when the appropriation is evidenced by the occupation of the owner, or of some person holding for him." *Held*,

(1) The words "land titled," as used in the section, embrace land covered by that evidence of right which the State gives through a patent, and are not restricted to those lands which are held under patent which, in the absence of section 2, article 14, would be deemed sufficient to confer title.

(2) If for reasons not appearing on the face of a patent, the grant would be void, or voidable, yet in contemplation of section 2, article 14, the land embraced in the calls of the patent would, for the purposes contemplated by the section, be deemed "land titled."

(3) Trueheart v. Babcock, 51 Texas, 117; Summers v. Davis, 49 Texas, 554; Westrop v. Chambers, 51 Texas, 188; Bryan v. Crump, 55 Texas, 10; Stublefield v. Boggs, 2 Ohio St., 219; Day Land and Cattle Company v. The State, 68 Texas, 525; DeCourt v. Sproul, 66 Texas, 368; Hanrick v. Dodd, 62 Texas, 91; Woods v. Durrett, 28 Texas, 436; Sherwood v. Fleming, 25 Texas Sup., 427; and Patrick v. Nance, 26 Texas, 301, cited.

(4) Under section 2, article 14 of the Constitution any location made on land which, before the adoption of that Constitution, had been patented is illegal, though the patent may have been void if it emanated from offices of the State authorized to convey title.

(5) Hanrick v. Dodd, 62 Texas, 91, and Miller v. Brownson, 50 Texas, 583, reviewed.

(6) When an illegal location is made on "land titled," the subsequent cancellation of the patent will not validate the location.

APPEAL from Victoria.    Tried below before the Hon. H. Clay Pleasants.

*S. R. Fisher*, for appellant: An unrecommended certificate, its location and survey, and patent thereon, is void. (Act January 29, 1840, p. 139; Rev. Stats., art. 3963; Constitution 1845, sec. 2., art. 11; Constitution 1876, sec. 5, art. 13; Warren v. Shuman, 5 Texas, 449–451; Miller v. Brownson, 50 Texas, 583; Mc-

Kinney v. Brown, 51 Texas, 94, 95; Peck v. Moody, 23 Texas, 93; Durrett v. Crosby, 28 Texas, 687, 694; Whitehead v. Foley, 28 Texas, 290.)

A void grant or patent does not protect land from subsequent appropriation. (Bryan v. Crump, 55 Texas, 11; League v. Rogan, 59 Texas, 428, 432; DeCourt v. Sproul, 66 Texas, 368, 370, 371; Day Land and Cattle Company v. The State, 68 Texas, 525; Smith v. Power, 23 Texas, 29; Bacon & Bates v. Russell, 57 Texas, 409; Holmes v. Anderson, 59 Texas, 481, 483, 484; Hanrick v. Dodd, 62 Texas, 75, 94; Sherwood v. Fleming, 25 Texas Supp., 408, 427; Atkinson v. Ward, 61 Texas, 383, 387, 388; Wright v. Hawkins, 28 Texas, 452, 470.)

Distinguishing grants void and voidable. (Todd v. Fisher & Miller, 26 Texas, 240, 241; Bryan v. Shirley & Mayhoff, 53 Texas, 440, 458; Gullett v. O'Connor, 54 Texas, 408; Hanrick v. Jackson, 55 Texas, 17; see, too, Sherman v. Buick, 93 United States, 209, citing Stoddard v. Chambers, 21 Howard, U. S.; Easton v. Salisbury, Id., and Reichart v. Felps, 6 Wallace, 160.)

A void patent constitutes neither title nor color of title, and does not sever the land from the public domain. (Marsh v. Weir, 21 Texas, 97; Bryan v. Crump, 55 Texas, 11; Smith v. Power, 23 Texas, 29, 33, 34; DeCourt v. Sproul, 66 Texas, 370; League v. Rogan, 59 Texas, 482.)

That O'Connor was not protected by reason of his relation to the duplicate certificate and patent thereunder against the Winsor surveys. (Moffatt v. United States, 112 U. S., 31, 32; Bryan v. Crump, 55 Texas, 12, 13; DeCourt v. Sproul, 66 Texas, 372; Constitution 1876, art. 14, sec. 2; Rev. Stats., art. 3812; Atkinson v. Ward, 61 Texas, 387, 388; Rev. Stats., art. 3898.)

*Glass & Collender,* for appellee: The court did not err in rendering judgment for appellee upon the agreed facts, because the duplicate certificate under which the survey was made for O'Connor, and the patent afterward issued thereon in the name of David Barrett, and delivered to O'Connor as the owner of the survey, were issued by the Commissioner of the General Land Office in the exercise of the authority conferred upon him by law; and, although erroneously issued, under a mistake of facts, they were not absolutely void, but only voidable by the State or at the suit of a party holding a prior right to the land. (Act of May 11, 1846; Pas. Dig., art. 4124; Todd v. Fisher, 26 Texas, 239, 241, 242; Bryan v. Shirley, 53 Texas, 440, 449–460; DeCourt v.

Sproul, 66 Texas, 368, 372; Hanrick v. Jackson, 55 Texas, 32, 33; Gullett v. O'Connor, 54 Texas, 409; Martin v. Brown, 62 Texas, 485; Boone v. Hunter, 62 Texas, 582; League v. Rogan, 59 Texas, 427, 432–434.)

The duplicate certificate was not absolutely void because procured by fraud. (DeCourt v. Sproul, 66 Texas, 368, 372; Martin v. Brown, 62 Texas, 485, 487, 488, and other authorities cited under first counter proposition.)

The land covered by the surveys and patent in the name of David Barrett, and claimed by O'Connor, was not "vacant unappropriated public domain" when Winsor made his locations upon it, but was "land titled, or equitably owned under color of title, from the sovereignty of the State," within the meaning of section 2, article 14, of the Constitution; and the evidence of the appropriation was on the county records of Refugio county and in the general land office, and the appropriation was also evidenced by O'Connor's possession and acts of ownership; and of this appropriation Winsor had not only constructive notice, but actual knowledge; wherefore his locations on the land were prohibited by the said section and article of the Constitution, and he acquired no right thereby. (DeCourt v. Sproul, 66 Texas, 368, 372; Trueheart v. Babcock, 51 Texas, 169, 177, 178; Summers v. Davis, 49 Texas, 541, 554, 555; McArthur v. Dunn, 7 How., 260; Jackson v. Clark, 1 Peters, 628; Galloway v. Finley, 12 Peters, 264; Niswanger v. Saunders, 1 Wall., 424–439.)

*D. W. Doom,* also for appellee.

STAYTON, ASSOCIATE JUSTICE. This is an action of trespass to try title brought by the appellant, who claims under locations made by him July 15, 1884, under which surveys were made September 19, of same year, which, with the certificates, were filed in the general land office, September 18, 1885. The certificates were valid and owned by the appellant. A valid headright certificate, No. 99, was issued by the board of land commissioners for Jefferson county to David Burrell, on March 5, 1838, which was afterwards recommended by the board appointed to detect fraudulent land certificates. Under this certificate, a patent was issued to the grantee for the quantity of land authorized by it. That land is situated in Jefferson county and still held under the patent.

In 1841, all the reports of the boards appointed under the act

approved January 29, 1840, entitled, "An act to detect fraudulent land certificates and to provide for issuing patents to legal claimants," having been filed in the general land office, were printed in one volume, a copy of which has since been used in that office for convenient reference to avoid handling the more cumbrous originals. This copy was not printed by authority, but as a matter of mere convenience. In this printed collection of the reports certificate No. 99 appears to have been issued to David Barrett instead of David Burrell, and in September, 1874, application was made, in the form prescribed by law, for a duplicate of certificate No. 99, issued to said David Barrett, and on the fifteenth of that month the commissioner of the general land office issued duplicate certificate No. 32-100 to David Barrett, under this application.

The appellee purchased that duplicate certificate, but some of the transfers through which he claimed seems to have been forgeries, and he caused the same to be located on the lands in controversy, had the surveys made on November 16, 1874, by the surveyor of the county in which the land is situated, and the field notes with the duplicate certificate were returned to the general land office on December 31, 1874. The locations and surveys were made on two tracts of land, and on one of them a patent issued to "David Barrett," on July 11, 1876. That patent covered the land in controversy.

O'Connor having ascertained that the duplicate certificate under which he was claiming the land, was issued without authority, on November 18, 1885, voluntarily surrendered to the Commissioner of the General Land Office for cancelation, the the patent issued to "Barrett," and on the same day it was canceled. On November 27, 1885, O'Connor located other valid land certificates, owned by him, on the land, and under this location a survey was made and the field notes with the certificates, within the time prescribed by law, were returned to the general land office, where they, as well as the certificates and field notes filed by the appellant yet remain, both parties claiming the land. The cause was tried without a jury, and a judgment entered for the defendant.

Conclusions of law on the agreed facts are not found in the record except as indicated by the general judgment entered. The leading question arising on the facts is, whether the land being covered by the patent to Barrett when Winsor made his files and surveys, they fell within the prohibition contained in

section 2, article 14, of the Constitution.  By that section of the Constitution, it is provided, among other things:  "That all genuine land certificates heretofore or hereafter issued shall be located, surveyed or patented, only upon vacant and unappropriated public domain, and not upon any land titled, or equitably owned under color of title from the sovereignty of the State, evidence of the appropriation of which is on the county record, or in the general land office, or when the appropriation is evidenced by the occupation of the owner, or of some person holding for him."  That the appellant had notice of the "Barrett" patent at the time he made his locations and surveys, there is no question.  No case has been before this court rendering the construction and application of this provision of the Constitution necessary; although it has been noticed in several cases when invoked to illustrate the meaning of the words "public domain" and "unappropriated public domain."

The facts of this case, however, call for its construction and application; for while it is apparent that a location, survey and patent under the duplicate certificate issued to Barrett could not convey an equitable ownership to O'Connor, yet it is claimed on the one side and denied on the other that the patent which issued to Barrett and existed at the time Winsor made his locations and surveys, within the meaning of the Constitution, gave to the land in controversy the character of "land titled."

If this be true the appellant acquired no right through his locations and surveys.   It is urged that the "Barrett" patent was void, and that it was not intended to withhold from locations survey and patent lands covered by such a title; and, that it was only intended by the provision of the Constitution referred to, to protect persons holding under patents or other instruments evidencing right which for some reason not appearing on the face of the title was voidable.  If the words "land titled," as used in the Constitution, do not apply to lands other than such as are held under patents in every respect void, or under patents good against every one except the State, or some person having a right that attached prior to the issuance of a patent, then the proposition asserted must be sustained; but if the words, as used, embrace all land covered by that evidence of right which the State gives through a patent, then the locations and surveys under which the appellant claims must be held invalid.  The more general meaning of the word "title" is the evidence of a right which a person has to property, and as this

is complete or incomplete, so stands the right. This is the sense in which the word is issued in the section of the Constitution preceeding that under consideration, which declares that "There shall be one general land office in the State, which shall be at the seat of government, where *all land titles* which have emanated or may hereafter emanate from the State, *shall be registered,* except those *titles the registration* of which may be prohibited by this Constitution."

The thing here directed to be registered is evidently the evidence of the right. The word is used in the same sense in section 4, article 13 of the Constitution, which forbids the registration or deposit of titles *issued* prior to the thirteenth day of November, 1835; for the prohibition therein contained relates to evidences of right which might have been recorded in the county where the land was situated, might have been archived, or which, but for the prohibition, might yet be deposited in the general land office, recorded, delineated on maps or used in evidence. It is used in the same sense in section 2 of article 13 and in section 6 of the same article, which provides that "the Legislature shall pass stringent laws for the detection and conviction of forgers of land titles." There may be instances in the Constitution in which the word "title" signifies the right to property and not the instrument which evidences the right, but if so, this is shown by the context.

Land is said to be "titled" when a patent is issued which on its face is evidence that the State has parted with its right and conferred it on the patentee. For reasons not appearing on the face of the patent, the grant may be void or voidable, but the land embraced in it is nevertheless "land titled."

The acts of February 5, 1850, provided "that no certificate of land, land warrant or evidence of land claim of any kind whatever, shall hereafter be located upon any land heretofore *titled or surveyed* within the limits of the colonies of Austin, DeWitt and DeLeon, and the Commissioner of the General Land Office is hereby prohibited from hereafter issuing a patent on any location hereafter made for any of the lands described in this act; and should any patent be hereafter issued for the same, or a part thereof, contrary to the provisions of this act, the same shall be null and void." (Pas. Dig., art. 809.)

In the case of Trueheart v. Babcock, 51 Texas, 177, it appeared, or was claimed, that a grant of two leagues, a part of an eleven league concession, within Austin's colony and titled by him as

empresario in 1831, was void, because the consent of the executive of the Mexican nation was not given to the grant, and that for this reason the land was subject to location. If the facts were as claimed, the land being within the coast leagues, the grant, under repeated decisions of this court, was void.

In that case, as in this, it was claimed, if the grant was void, that the land embraced within it was not "titled," within the meaning of the statute; but this court said "that this land had been titled or surveyed," is not questioned; but the old grant to Miguel Muldoon is claimed to have been null and void, because within the littoral leagues, and had never been approved by the federal executive of Mexico. The title under which the plaintiff claims was subsequent to the act of February 5, 1850. The legislature by the express terms of this act, prohibited such subsequent locations in most emphatic language, and declared them null and void, without any limitation, exception or reservation as to the validity of subsisting prior grants. Should the courts engraft exceptions upon a statute thus intended to quiet titles, they would encourage that litigation which it was the very obvious intention of the Legislature to prevent.

The following cases, though not presenting identical facts. assert the same rule of construction: Summers v. Davis, 49 Texas, 554; Westrope v. Chambers, 51 Texas, 188; Bryan v. Crump, 55 Texas, 10.

The act of Congress of March 2, 1807, differed in no material respect from the act of February 5, 1850, above quoted, but the words "lands for which patents have previously been issued," were used in the act of Congress where the words "heretofore titled" are found in the act of February 5, 1850. The language used in these two statutes has the same meaning as the words "lands titled," found in the Constitution. Under the act of Congress, which also prohibited locations on lands already surveyed, the Supreme Court of the United States has already held that the act prohibited the location or patent of lands covered by patents or surveys, although these may have been void. Jackson v. Clark, 1 Peters, 638; Zalloway v. Finley, 12 Peters, 298; McArthur v. Dunn, 7 Howard, 270; Niswanger v. Saunders, 1 Wall, 438.

In the case last cited it was said "when a survey is void for circumstances not appearing of record on its face, and which must be proved by extrinsic evidence from different sources, then a second enterer can not be found to adduce such proof,

37

because he is met by the statutes and not allowed to obtrude on the existing survey by a second location. He can obtain no interest in the land to give him a standing in court. The government can justly say to him 'you are a stranger and must stand aside;' this land is withdrawn from location; you can not be heard, * * * when the entries, surveys and patents had been made to dead men, and were void, of course, for want of a grantee; yet this court held that the act of 1807 applied, and that a second entry on the first survey was void." It was insisted in some, if not all the cases we have cited, that the statutes to which we have referred had reference to imperfect and not void titles, but in the case of Galloway v. Finley the court replied: "The legislature merely affirmed a principle not open to question, if this be the true construction. Had an effective patent been issued the government would not have had any title remaining and a second grant would have been void, of course. Something more, undoubtedly, was intended than the protection of defective, yet valid, surveys and patents; this is not denied, but the argument insists only irregularities were intended to be cured. It is difficult to consider how an irregular patent could exist unless it passed no title. We will not perplex the decision with supposed cases of irregular surveys, but examine the act of Congress and ascertain its effect as regards the grant in question. It is fair upon its face and we will not look behind it for irregularities. * * * * The statute is general, including by name all grants, not distinguishing between void and valid; and the plainest rules of propriety and justice require that the courts should not introduce an exception, the legislature having made none."

The same rule is asserted in the case of Stubblefield v. Boggs, 2 Ohio State, 219. The prohibition found in the Constitution, against the location, survey or patent of "land titled," as fully deprives a location, survey or patent, on such land, of legal force or effect as would an express declaration that they shall be deemed void.

This court, in the case of Day Land and Cattle Company v. The State, 68 Texas, 525, in considering the effect of the constitutional provision under consideration, as bearing on the question of what is to be deemed "vacant and unappropriated public domain," held that lands covered by void titles did not constitute a part of the public domain subject to location, and that such lands, within the meaning of the Constitution, were "lands

titled." The question was not directly involved in that case, but we believe the conclusions therein reached to be correct. In the case of DeCourt v. Sproul, 66 Texas, 368, there is language which may be construed to hold that land covered by a void grant is subject to location, but the facts of that case did not call for the decision of that question; for the land, which was sought to be appropriated by a settler, was held under a patent held not to be void.

The cases cited by appellant do not reach the questions involved in this case. Hanrick v. Dodd, 62 Texas, 91, simply holds that a forged paper, purporting to be a title, is no title at all. Atkinson v. Wood, 61 Texas, 387, holds that a forfeited location does not give equitable ownership under color of title from the sovereignty of the soil, and that, where a location has ceased to have effect, the land may be located and patented to another person. Miller v. Brownson, 50 Texas, 583, holds that a location made under an unrecommended land certificate, did not confer any equitable ownership which would withdraw the land from appropriation by some other person. When land is not "titled," the Constitution does not prohibit its location unless it be "equitably owned under color of title from the sovereignty of the State."

The locations and surveys under which the appellant claims, having been made while the land was not subject to location, were void, and the subsequent cancelation of the Barrett patent does not give them effect. (Woods v. Sterrett, 28 Texas, 436; Sherwood v. Fleming, 25 Texas Sup., 427; Patrick v. Nance, 26 Texas, 301; Kimmell v. Wheeler, 22 Texas, 85.) We do not understand this to be questioned by the appellant.

These issues being decisive of the case, it is not necessary to consider the other questions presented. There is no error in the judgment, and it will be affirmed.

*Affirmed.*

Opinion delivered January 31, 1888.