**BARROW v. BOYLES et al.** (No. 9275.)

Court of Civil Appeals of Texas. Galveston. June 20, 1929.

Rehearing Denied Oct. 17, 1929.

Niday & Carothers and R. H. Ward, all of Houston, for appellant.

Baker, Botts, Parker & Garwood, C. L. Carter, and S. H. German, all of Houston, for appellee Texas Co.

Hunt, Moseley & Hunt, of Houston, for appellees East Texas Oil Co. and Harris County Land & Improvement Co.

A. J. DeLange, of Houston, for appellees McKnight.

J. E. Walton,. of Houston, for appellees Guinn and others.

K. C. Barkley, of Houston, for appellees Garrett and others.

W. P. Hamblen, of Houston, for appellees Collins and others.

J. W. Lockett, of Houston, for appellees Stewart and others.

Fulbright, Crooker & Freeman, of Houston, for appellees Hornberger and others.

PLEASANTS, C. J. This is a suit for mandamus brought by appellant against J. S. Boyles, county surveyor of Harris county, to compel him to make a survey of land in that county claimed by appellant to be public land set apart to the permanent free school fund of the state, and for which appellant had filed application for purchase under the terms and provisions of article 5323, Rev. St. 1925. The suit was brought under the second section of this article of the statute.

The defendant Boyles impleaded a number of persons, appellees herein, who were in possession of the land, claiming title thereto under a grant from the State of Coahuila and Texas made to the Mexican citizen Victor Blanco, in 1831.

The application for purchase was made by Victor Blanco in 1828 and was for eleven sitios or leagues of land. This application was approved by the Governor on October 25, 1828, and the title to him from the State of Coahuila and Texas was extended on June 1, 1831.

Plaintiff's petition, which is necessarily lengthy, sets out in full copies of all of the documents and records evidencing the grant to Victor Blanco under which the impleaded defendants claim title, and alleges that the defendants are claiming title "under purported conveyance in regular chain under said purported Victor Blanco grant."

The defendant Boyles in his answer admitted the truth of the allegations of the petition showing compliance by plaintiff with all of the requirements of the statute in the matter of his application for the purchase of the land and as to the title claimed by defendants being under the grant to Victor Blanco from the State of Coahuila and Texas, and averred that he refused to make the survey because the Commissioner of the General Land Office declined to recognize the land as vacant and unappropriated public land and declined to authorize a survey thereof, and because the impleaded defendants were claiming title to the land; the nature of such respective claims and the acreage claimed by each being unknown to this defendant. He further averred that he was willing to make the survey and return the field notes thereof to the General Land Office in event the court should hold that the land is unappropriated public domain and a part of the public school lands of the state.

The other defendants answered by general demurrer, and by special exceptions and pleas the nature of which, in view of the ruling of the trial court on the general demurrer, need not be stated.

The trial court sustained the defendants' general demurrer, and the plaintiff declining to amend, his suit was dismissed.

We deem it unnecessary to set out in detail the several propositions upon which appellant contends that the judgment of the trial court sustaining the general demurrer to his position should be reversed.

His main contention is that the grant to Victor Blanco by the State of Coahuila and Texas was void, because the land thereby granted was situated within the ten littoral leagues bordering on the coast of the Gulf of Mexico, and the grant was not issued with the consent or knowledge of the President of the government of the Mexican nation.

The decision of the question presented by this contention is not necessary in determining the disposition of this appeal. The holdings of the Supreme Court of the United States and the Supreme Court of Texas upon the question are conflicting.

In the cases of Wilcox v. Chambers, 26 Tex. 181, Cowan v. Williams, 49 Tex. 380, and Wood v. Welder, 42 Tex. 396, it is held, following earlier decisions of the Supreme Court of this state, that the consent of the Federal Executive of Mexico was essential to the validity of a grant of land within the littoral or border leagues, whether the grant was to a foreigner or to a Mexican citizen.

The Supreme Court of the United States in the case of De Arguello v. United States, 18 How. 539, 15 L. Ed. 478, in an exhaustive and able opinion, construes the Mexican laws at the time in question as not requiring the consent of the Mexican President to a grant of public land within the littoral or border leagues, when such grant is made to a Mexican citizen and not for settlement by foreign immigrants. This decision was followed by the Supreme Court of this state in the case of Cavazos v. Trevino, 35 Tex. 133, but that court in the later case of Wood v. Welder, supra, returned to its holding in the earlier cases.

In the Chambers Case, supra, Judge Bell, who wrote the opinion, while feeling constrained to follow the earlier decision on the question, with his usual force and clearness expressed his opinion that the former decisions were unsound, and that the Mexican laws at the time this grant was made should not be construed as requiring the consent of the Mexican President to a grant by a state of its public lands within the littoral or border leagues when such grant was made to a Mexican citizen.

The writer fully agrees with Judge Bell in the conclusions expressed by him, nor does he think that the question as here presented should be controlled by the rule stare decisis. But, as before said, we are not required to decide the question, since in our opinion the judgment must be affirmed, it matters not how this question is decided.

■■ The statute under which the suit was brought should not be construed as authorizing a suit by a private citizen to recover for the state land occupied by persons claiming adversely to the state under a grant from a former sovereignty of the soil issued nearly 100 years ago, which is not void upon its face, and the validity of which has never been assailed or questioned by the state, but has been during all these years, and is now, recognized by the General Land Office of the state. Such a suit can only be brought by the Attorney General under article 5420, Rev. St. 1925.

It seems to us that to construe the statute as authorizing this suit by appellant would make the legislative law thereby enacted so unreasonable as to largely excuse if not justify the impressive declaration of Mr. Bumble in Oliver Twist that "the law is a 'ass." We think the reasonable construction of section 2 of article 5323 is that the Legislature by its enactment only intended to give a private citizen the right to compel the survey of land claimed to be not included in any prior grant by the state or former sovereignty of the soil. The statute only authorizes the bringing of the suit when there is doubt "as to the existence of the area" as public school land. This language indicates the intention of the Legislature to only give the right when there is a claim of vacancy between former grants.

The following correct history of this legislation is copied from appellees' brief:

"This section was first incorporated in our laws as a part of section 7, chapter 163, Acts of 1919, approved April 3, 1919, and was in the form of an amendment to article 5432, of the Revised Statutes of 1911. In the statutes of 1911 this article is captioned 'Unsurveyed or Scrap Lands.' This article had prior to that time been section 8 of chapter 103 of the Acts of 1905, approved April 15, 1905. This section in the Act of 1905 took the place of section 6 in chapter 11 of the Act approved February 23, 1900 (Acts 1st Called Sess. 26th Leg.) which section was amended by the Act approved April 15, 1901 (Acts 1901, c. 88, § 1).

"It will be seen that article 5323 is really old section 6 of the Act of February 23, 1900, as amended, with what is now section 2 of this article with reference to suits to require survey added thereto. In other respects the article is substantially the same as original section 6 of the act of 1900.

"Section 8 of the act of 1900 (Acts 1st Called Sess. 26th Leg. c. 11), provided that where any public land or lands belonging to any vendee of the State were held, occupied or claimed by any one adverse to the State or such vendee, it should be the duty of the Attorney General to institute suit therefor. This section became article 5468 of the Revised Statutes of 1911 and is now article 5420 of the 1925 statutes, which is as follows: 'When any public lands are held, occupied or claimed by any person, association or corporation adversely to the State, or to any fund, or when lands are forfeited to the State for any cause, the Attorney General shall institute suit therefor, together for rent thereon, and for any damages thereto. For the purposes of this and the preceding article, venue is fixed in Travis County, concurrently with the county of defendant's residence and the county where the land lies.'"

In the case of Juencke v. Terrell, 98 Tex. 237, 82 S. W. 1025, 1026, the plaintiff brought suit in the Supreme Court for mandamus to compel the Commissioner of the General Land Office to file plaintiff's application to purchase land in Liberty county claimed by him to be public school land. The Commissioner refused to file the application on the ground that the land sought to be purchased "was in conflict with a prior and incomplete" grant to P. P. Devers. In refusing the mandamus the Supreme Court says:

"The present Constitution contains this provision: 'All genuine land certificates heretofore or hereafter issued shall be located, surveyed or patented only upon vacant and unappropriated public domain, and not upon any land titled or equitably owned under color of title from the sovereignty of the state, evidence of the appropriation of which is on the county records or in the general land office; or when the appropriation is evidenced by the occupation of the owner, or of some person holding for him.' Const. art. 14, § 2. This provision does not prohibit the Legislature from providing for the sale of such lands; but it very clearly evinces the policy of the state not to encourage litigation by permitting the acquisition from the state of lands which appear upon the official records, or by actual occupancy to be claimed adversely to it. It should not lightly be assumed that the Legislature intended to depart from that policy.

"Our conclusion is that section 6 of the act under construction applied only to such lands as appeared upon the maps and records of the General Land Office not to be claimed by other parties, and to such as had been adjudged to the state, if ever so claimed."

It should be borne in mind that the statute referred to in this opinion is identical with article 5323 of our present statute, with the addition of section 2 of that article.

The holding in the Juencke Case was approved and followed in the case of Southern Pine Lumber Company v. Consolidated Lumber Company (C. C. A.) 217 F. 719, in which it was held that the Commissioner of the Gen-

eral Land Office was not authorized to place upon the market as public land any land which appeared to have been previously granted until the invalidity of such prior grant had been shown and the land recovered by the state in a suit brought by the Attorney General.

A similar holding was made by our Supreme Court in the case of Fitzgerald v. Robison, 110 Tex. 468, 220 S. W. 768, 769, in which it is said: "If the particular land has been wrongfully patented, and it is rightfully a part of the public domain, the remedy of the State is an action in the District Court prosecuted by the Attorney General."

It would be a strained and unreasonable construction of section 2 of article 5323 to hold that the Legislature intended to give a private citizen the right to a mandamus against the surveyor of the county in which the land was situated to compel a survey of land which the Commissioner under the decisions just cited had rightly refused to place upon the market because it was covered by a prior grant, the invalidity of which had not been established by a suit brought by the only officer of the state authorized to bring such suit.

There is nothing in the language of the statute to compel such holding, and in the absence of such plain and compelling language the courts will not conclude that the Legislature intended, in the language of the decisions before cited, to "turn loose a flood of litigation between purchasers and adverse claimants of the land."

It is immaterial to the application of the rulings in these cases that the grant to Victor Blanco may not be of record in the General Land Office, or have been properly authenticated for record. The existence of such grant and the claim of appellees thereunder and their adverse occupation of the land under such claim are shown by the allegations of plaintiff's petition to be known to the Commissioner, and his refusal to place the land on the market is alleged to be based on his knowledge of such grant and the adverse claim and occupancy of the land thereunder.

That the state could stand by for 100 years and acquiesce in the purchase and occupancy by its citizens of land claimed under title issued by the former sovereignty of the soil, and, as may be reasonably inferred from the allegations of the pleadings, collect taxes on the land during all these years from its claimants and occupants, and after this lapse of time be allowed to assert title to the land and dispossess those who have purchased on the faith of this acquiescence, is a proposition so unjust and inequitable that no court of equity should entertain it even in favor of sovereignty.

But if the question could be raised by general demurrer, we are not required to hold the state is estopped from asserting title to this land, because we think the Legislature of the state by the Act of February 5, 1850, validated the Victor Blanco grant. This act contains the following provisions:

"Section 1. Be it enacted by the Legislature of the State of Texas, that no certificate of land, land warrant or evidence of land claim of any kind whatever, shall hereafter be located upon any land heretofore titled or surveyed within the limits of the colonies of Austin, De Witt and De Leon, and the Commissioner of the General Land Office is hereby prohibited from hereafter issuing a patent on any location hereafter made for any of the lands described in this act; and should any patent be hereafter issued for the same, or a part thereof, contrary to the provisions of this act, the same shall be null and void.

"Sec. 2. Be it further enacted that this act shall take effect and be in force from and after its passage." 3 Gammel's Laws, 556.

█ The court will take judicial knowledge of the fact that the grant involved in this suit was within the boundaries of Austin's Colony.

This act by its terms withdrew from appropriation all "titled" or "surveyed" lands within the named colonies. That the purpose of the act was to quiet and validate land titles in these colonies is, we think, clear, and it has been so construed by our Supreme Court in the following cases: Truehart v. Babcock, 51 Tex. 169; Summers v. Davis, 49 Tex. 541; Westrope v. Chambers, 51 Tex. 178; Winsor v. O'Connor, 69 Tex. 571, 8 S. W. 519.

The two cases first cited also held that the words "titled" or "surveyed" lands means as well lands held under a grant void because subsequently annulled or because not issued with the consent of the Mexican Federal Executive, as those held under a subsisting valid grant. In the first case cited it is said:

"As held by this court in Summers v. Davis, 49 Tex. 541, the object of this statute, and that of the act of 1856 (General Laws, 4th Leg., adjourned session, p. 59) was undoubtedly to quiet land titles in the colonies named, and would even include a title which, by the decree of the ayuntamiento, had been annulled, and which was 'to be regarded as though it had never had an existence.'

"That this land had been 'titled or surveyed,' is not questioned; but the old grant to Miguel Muldoon is claimed to have been null and void because within the littoral leagues, and had never been approved by the Federal Executive of Mexico. The title under which plaintiff claims was subsequent to the act of February 5, 1850. The Legislature, by the express terms of this act, prohibited such subsequent locations in most emphatic language, and declared them null and void, without any limitation, exception, or reservation as to the validity of subsisting prior grants. Should the courts ingraft exceptions upon a statute thus intended to quiet titles, they would encourage that litigation which it

was the very obvious intention of the Legislature to prevent."

This act is almost identical with an act of the Congress of the United States passed in 1807 prohibiting the location of bounty warrants within the Virginia Military District, and in construing our statute our Supreme Court followed the decision of the Supreme Court of the United States construing the similar act of Congress. Galloway v. Finley, 37 U. S. (12 Pet.) 264, 9 L. Ed. 1079; McArthur v. Dun, 48 U. S. (7 How.) 262, 12 L. Ed. 693.

While a repeal of the act of 1850 could not affect a title vested thereunder, there has been no direct repeal of the act, and no repeal can be implied from the failure to include the act in subsequent revisions of our statutes. The act is clearly a local law, its application being confined to territorial limits embracing a comparatively small portion of the state. Vincent v. State (Tex. Com. App.) 235 S. W. 1084; Commissioners Court v. Garrett (Tex. Com. App.) 236 S. W. 970; R. C. L. p. 874.

The purpose of each and all of the revisions of our statutes has been "to revise, simplify, and consolidate all general laws into a compact form," and none of these revisions has ever carried forward special or local laws, but on the contrary the acts adopting these revisions each expressly provides that no general or special law theretofore enacted validating any act or proceeding whatever are affected by the repealing clause of the act adopting the report of the Commission of Revision, but that all such validating statutes shall continue in force, and that no local or private law shall be affected by the repealing clause of the adopting act. There can, under these provisions of the statute, be no question of the repeal of the act of 1850 before referred to, and our construction of this act being that it validated the Victor Blanco grant under which appellees hold title, the trial court correctly sustained the general demurrer to plaintiff's petition.

For the reasons indicated, the judgment must be affirmed, and it has been so ordered.

Affirmed.

### On Motion for Rehearing.

We have carefully considered the able and exhaustive motion for rehearing presented by counsel for appellant. The motion presents nothing that was not considered by us in arriving at the conclusions expressed in our main opinion.

The complaint that this court erred in holding that the rule of stare decisis should not be applied in this case need not be discussed, because the court made no such holding, and the statement in the opinion that the rule was not controlling in this case was expressly stated as the opinion of the writer only, and because, if the court had so held, the decision was not based on that conclusion. On this question the writer adheres to the conclusion expressed in the original opinion, but the question being immaterial to the decision of the case, we will not becloud the material questions involved in the appeal by a discussion of this issue.

The criticism in the motion of the statement in our opinion that there was a conflict in the decisions of the United States Supreme Court and the Supreme Court of this state upon the question of whether the grant to Victor Blanco was void under the colonization laws of Mexico at the time the grant was extended, and the statement of the legislative history of the statute under which appellant's suit was brought, are without merit. The opinions referred to in our opinion conclusively establish the conflict, and the fact that the Supreme Court of the United States in a subsequent decision to the one cited by us, without agreeing to the conclusions of the Supreme Court of this state upon the question, adopted such conclusions, because, as stated in the opinion, of the controlling effect of the long-established rule of the United States court that, regardless of its opinion upon any question affecting the title to land, it would follow the opinion of the Supreme Court of the state in which the land was situated, does not in any way affect the accuracy of the statement in our opinion.

The statement in our opinion of the legislative history of the statute under which appellant's suit is brought is substantially correct, and if inaccurate in any of the particulars pointed out in the motion, such inaccuracies are immaterial in the determination of the question presented by this appeal.

We are entirely satisfied with the soundness of the conclusions expressed in our original opinion, and the motion for rehearing is overruled.

Overruled.