A. N. FITZGERALD ET AL. v. J. T. ROBISON, COMMISSIONER OF THE GENERAL LAND OFFICE

Motion No. 4749. Decided April 21, 1920.

(220 S. W., 768.)

**Oil and Gas—Permit to Prospect—Commissioner of General Land Office.**

The Commissioner of the General Land Office is an executive, not a judicial officer, and is not vested with authority to annul titles to land granted by patent from the State, as would be the effect of his granting permit to parties to prospect thereon as public lands on the view that they were unlawfully patented. It was proper for him to refuse such permit, and the Supreme Court will not entertain a petition for mandamus to require him to issue it. The proper remedy is suit by the State, by its Attorney-General,

to cancel the patent, if illegal., Rev. Stats., art. 5468; Dunn v. Wing, 103 Texas 393; Juencke v. Terrell, 95 Texas, 237.   (Pp. 469, 470).

Original proceeding in the Supreme Court by Fitzgerald and others against Robison and others for writ of mandamus to require the latter, as Commissioner of the General Land Office, to issue to relators a permit to prospect for oil and natural gas on certain lands alleged to have been unlawfully patented and to be the property of the State:

Motion for leave to relators to file petition, and for written opinion following a refusal *per curiam* of such leave.

*Thomas H. Stone, C. C. Crocker,* and *Cole & Cole,* for relators. Their brief was directed to the proposition that the patent to Ashbel Smith was absolutely void.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

At a former date the motion for leave to file a petition for mandamus in this case, to require the Commissioner of the General Land Office to issue the relators a permit to prospect for oil and gas upon the certain land in Harris County known as Hog Island, was refused.

This motion is one by the relators asking that the court indicate the reason for its refusal to grant the original motion. It is not the practice of the court to file opinions in the refusal of motions for leave to file petitions for mandamus, but because of the nature of this case and the number of mandamus proceedings of the same character that are being filed in the court we deem it proper to restate the rule of the court as to such cases.

The land here involved was patented to Ashbel Smith in the year 1859 and it is now held under that patent. The patent has never been annulled by any suit at the hands of the State. For more than sixty years the State has recognized its validity so far as indicated by any action on its part. As between the State and other parties, therefore, the land has the *status* of titled land.

We do not think the Land Commissioner, an executive officer, has the authority or is at liberty to disregard the patent, by his own action in effect declare it void, and grant rights in conflict with it; and he should not be compelled to do so.

It was for this reason that the Commissioner refused to issue the permit, and his action must be approved.

The Commissioner is not a judicial officer. It is not his function to annul grants of land formally made by the State, and because so made, entitled to be respected until set aside by appropriate judicial proceedings. A patent to land can only be attacked by the State or some one invested with a right prior to the patent. Dunn v. Wing, 103 Texas, 393.

If the particular land has been wrongfully patented, and it is rightfully a part of the public domain, the remedy of the State is an action in the District Court prosecuted by the Attorney General. Article 5468.

This court will not pass upon the validity of such titles in mandamus proceedings brought by private parties against the land Commissioner. A contrary ruling would but announce that the Land Commissioner, in the first instance, has the authority to adjudicate such titles, and, if in his opinion invalid, annul them.

In Juencke v. Terrell, Commissioner, 95 Texas, 237, the court made this announcement upon the subject:

"We are of the opinion that where there is a dispute as between the State and another party as to the title to a tract of land, the Commissioner cannot be compelled to make a sale. It is hardly within the scope of his functions or duties to pass upon titles in such cases; and we should be reluctant to hold that the Legislature intended to impose such duty upon him, in the absence of language in the statute showing clearly that intent. It is known that at the date of the original act which appropriated these lands to the school fund there were many large bodies of land lying in the State held by persons who asserted title thereto, and whose titles had never been adjudicated and were not conceded. It is unreasonable to suppose that the Legislature intended to put such lands upon the market for sale, and thus to turn loose upon the courts a flood of litigation as between the purchasers and the adverse claimants. On the contrary, we think that the purpose of the Legislature with reference to them is shown by the eighth section of the act. That section in part is as follows: 'When any of the lands described in this act, or any of the other public lands of the State held or owned by any fund, or any land in which this State or any such funds have an interest, are held, occupied or claimed by any person or association or corporation, adversely to the State, or to such fund, it shall be the duty of the Attorney-General to institute suit therefor.'"