### GILES et al. v. POOLE et al.
### No. 9973.

Court of Civil Appeals of Texas. Austin.

May 9, 1951.

Rehearing Denied May 30, 1951.

Price Daniel, Atty. Gen., Charles D. Mathews, First Asst. Atty. Gen., Jesse P. Luton, Jr., and E. Jacobson, Assts. Atty. Gen., for appellants constituting School Land Board of Texas.

J. P. Bryan, Freeport, Guy L. Nevill, Roy L. Merrill, Bell, Dyche & Bell, W. E. Dyche, Jr., and Spurgeon E. Bell, all of Houston, for appellant, Brazos Oil & Gas Co., Intervenor.

Masterson & Pope, by Alex Pope, Jr., of Angleton, for appellees.

Rucks, Enlow & Kee, by Floyd Enlow, of Angleton, for appellee J. L. Ducroz, Intervenor.

HUGHES, Justice.

This suit was brought by T. J. Poole, Jr., and Donald K. Poole against The School Land Board of Texas, composed of the Governor, the Attorney General and the Commissioner of the General Land Office of the State of Texas.

The purpose of the suit was to enjoin the Board from leasing or attempting to lease for mineral development certain areas in Brazoria County.

The Brazos Oil and Gas Company intervened and is aligned with the Board.

J. L. Ducroz intervened and is aligned with the Pooles.

On February 28, 1951, after notice and hearing, the trial court granted a temporary injunction enjoining the members of the Board from "accepting any bid or bids for an oil and gas lease or leases on any of the area located within the boundaries of the following grants and patents in Brazoria County, Texas, heretofore issued by the State of Texas and the Republic of Mexico and State of Coahuila and Texas:

"(1) The Calvin Sumrels (sometimes spelled Sumrall or Summerall) Survey dated on or about August 28, 1849, to approximately 1476 acres of land described by metes and bounds and known as Abstract Number 368.

"(2) The J. H. Gamble Survey dated on or about August 30, 1847, to approximately 1476 acres of land described by metes and bounds and known as Abstract Number 194.

"(3) The William H. Butler Survey dated on or about July 3, 1847, to approximately 1476 acres of land described by metes and bounds and known as Abstract Number 154.

"(4) The Rebecca A. Murrie Survey dated on or about February 11, 1886, to approximately 1280 acres of land described by metes and bounds and known as Abstract Number 587.

"(5) The Parker Williams Grant dated December 13, 1832, to approximately 1107 acres of land described by metes and bounds and known as Abstract Number 137.—

and from granting or purporting to grant any oil and gas lease or leases on any of the area within the boundaries of said patents, surveys or grants or any of them, or otherwise clouding or encumbering the title of said plaintiffs to said area or areas * * *."

It was also decreed: "The Temporary Injunction herein granted shall remain in full force and effect in accordance with prayer of Plaintiffs and Plaintiff Intervener until a Final Hearing herein on the merits of this cause at which time there shall be determined whether such injunction shall be made permanent unless and until such time as the Attorney General of the State of Texas institutes suit in a proper court to cancel and annul said patents and by such action does cancel and annul said patents insofar as they affect the lands in question."

A similar injunction was granted J. L. Ducroz as to tracts (1), (3), and (5).

The Board and Brazos have appealed.

It is conceded by appellants that the areas which the Board advertised for lease for mineral development are located within the patent calls of the Calvin Sumrel, Joseph H. Gamble, William H. Butler, Rebecca Murrie and Parker Williams Surveys in Brazoria County, and that appellees own apparent interests therein.

Since, however, it is undisputed that the areas in question are submerged lands in Cowtrap Lake No. 2 and Cedar Lake, which lakes presently connect with the Gulf of Mexico and are within tidewater limits, it is the position of appellants that the mineral estate in those lands is within the terms of Art. 5421c-3-5,[1] V.A.C.S., the pertinent provisions of which read:

"All lands set apart for the permanent free school fund and the several asylum funds by the Constitution and the laws of this State and the mineral estate in river beds and channels, and the mineral estate in all areas within tidewater limits including islands, lakes, bays, and the bed of the sea, belonging to the State of Texas, are subject to control and disposition in accordance with the provisions of this Section and other pertinent provisions of this Act and other laws not in conflict herewith; * * *. (Sec. 1–c3.)

"The mineral estate in river beds and channels and in all areas within tidewater limits, including islands, lakes, bays, and the bed of the sea, belonging to the State of Texas, are hereby set apart and dedicated to the permanent school fund. (Sec. 2–c3.)

\* \* \* \* \* \*

"All islands, salt water lakes, bays, inlets, marshes, and reefs owned by the State within tidewater limits, and that portion of the Gulf of Mexico within the jurisdiction of Texas; all beds of rivers and channels belonging to the State; and all unsold public free school land, both surveyed and unsurveyed, shall be subject to lease by the Commissioner of the General Land Office to any person, firm, or corporation for the production of minerals, \* \* \*. (Sec. 1–c5.)

\* \* \* \* \* \*

"It shall be the duty of the Commissioner of the General Land Office to furnish the Board from time to time a list of all lands subject to the provisions of this Section. (Sec. 9–c3.)

"All awards or leases shall be issued by the Commissioner of the General Land Office in accordance with the minutes as approved by the School Land Board." (Sec. 10–c3.)

With respect to these statutes and the areas in question the Commissioner of the General Land Office, Chairman of the School Land Board, testified:

"Q. As I understand it, Mr. Giles, your position with regard to the advertisement of these areas involved in this suit for leasing was based upon your determination that they were subject to the ebb and flow of the tide and probably arms of the sea, and therefore belonged to the State and were held by the State in trust for the people; is that right? A. That's right.

"Q. And you conceived it to be your duty under the statute, after having determined that, they were therefore owned by the State and it was your duty to get as much money as you could for the State in leasing? A. At the proper time—lease them at the time you would get good money for them."

In our opinion this proceeding is, in effect, a suit against the State and it not appearing that the State has given its

1. This Article created The School Land Board.

consent to be sued in this instance, the suit cannot be maintained.

This holding makes immaterial all other questions raised by the parties.

Our decision is based upon the case of Short v. W. T. Carter & Brother, 133 Tex. 202, 126 S.W.2d 953, 956 (Tex.Com.App. Opinion adopted by the Supreme Court).

In that case an effort was made to enjoin the Commissioner of the General Land Office from issuing mineral leases on certain tracts as being "unsold public free school land," plaintiffs alleging that they were within the true boundaries of surveys owned by them. The court there had before it Section 8 of Chapter 271, Acts Reg.Sess. 42nd Leg., Vernon's Ann.Civ.St. art. 5421c, § 8, which, in part provided: "All islands, salt water lakes, bays, inlets, marshes, and reefs owned by the State within tidewater limits, and that portion of the Gulf of Mexico within the jurisdiction of Texas, and all unsold public free school land, both surveyed and unsurveyed, shall be subject to lease by the Commissioner to any person, firm, or corporation for the production of minerals, * * *."

This portion of such Article is identical with the provisions of present Art. 5421c-5, Sec. 1, supra, except that in the present Article "all beds of rivers and channels belonging to the State" have been added to the areas subject to lease by the Commissioner of the General Land Office.

The holding in the Short case was:

"We therefore hold that Section 8 of the Act of 1931 confers upon the Commissioner of the General Land Office lawful authority to determine, as a basis for his action in executing or in declining to execute mineral leases upon the applications filed by defendants Short, Gholson and Sullivan, the question whether the area or areas applied for and described in the field notes are unsurveyed land as defined in the Act. Since lawful authority to make such primary determination is conferred upon him, the courts cannot, when the question is still properly before him, take jurisdiction and proceed to decide the question. The primary purpose of this suit is to restrain the Land Commissioner in the performance of the duty and the exercising of the authority imposed and conferred upon him by statute for the purpose of making disposition of the State's school land. The order of District Court granting the injunction, from which the appeal was taken, contains a finding that the lands described in the petition are not vacant, unappropriated school lands but are included within a survey of titled land, thus deciding the very question that the Land Commissioner, an executive or administrative officer, is authorized by statute first to determine. * *

"A suit of this character, to enjoin the Land Commissioner, when acting within the scope of his authority, from making an award or executing a lease, is a suit to control the action of the State in selling its public lands and is therefore in effect a suit against the State, which cannot be maintained, the State not having consented to be sued."

Our decision must be the same here. There is no distinction between the authority of the Land Commissioner to make a primary determination for the purpose of issuing a mineral lease that the areas to be leased were unsurveyed "*unsold* public free school land," as held in the Short case, and the authority of the Land Commissioner or the School Land Board here to make the primary determination for the same purpose that the areas to be leased were "salt water lakes * * * *owned by the State* within tidewater limits". The principal determination in either instance is that of ownership.

True ownership of the areas involved is not an issue in this suit and our opinion is written without reference to such issue.

The principal authorities cited by appellees are cases decided prior to the Short case, most of which were discussed and distinguished in that opinion. We need not go over the same ground again. No case decided after the Short case and involving similar facts is cited by appellees.

█ Appellees have moved to dismiss the appeal of Brazos, on the ground that since it was not enjoined it had no right to appeal from the temporary injunction. This motion is overruled. Brazos was the

high bidder for the leases advertised by the Board on the areas in question and it was adversely affected by the temporary injunction and, being a party, had the right of appeal.

The interlocutory judgment of the trial court is reversed, the temporary injunction granted by it is dissolved, and judgment is here rendered dismissing appellees' suit.