IN THE SUPREME COURT OF TEXAS








IN THE SUPREME 
COURT OF TEXAS
════════════
No. 06-0911
════════════
Edwards Aquifer 
Authority et al., Petitioners,
v.
Chemical Lime, Ltd., 
Respondent
════════════════════════════════════════════════════
On 
Petition for Review from the
Court of Appeals for the Third District of 
Texas
════════════════════════════════════════════════════
 
Argued April 1, 
2008
 
 
            
Justice 
Willett, concurring.
 
 
            
I agree with the Court that under Barshop[1] the Edwards Aquifer Authority became 
effective on the date of our opinion in that case. The issue as briefed to us, 
however, and as addressed at length by the court of appeals, raised a more 
fundamental legal question: When does an appellate-court judgment become final 
and take effect? This vexing question will no doubt recur and, in my view, 
warrants the Court’s rulemaking attention. To some degree, the issue has a 
certain “angels dancing on the head of a pin” quality to it, interesting (to 
some) as a matter of logic and perplexing (to all) as a matter of practice. It 
is confounding, to be sure, but also consequential.
            
So I join in the Court’s judgment and, like Justice Brister, most of its opinion. 
But as a general matter the better default date is the mandate, the formal order 
declaring our review complete, our decision final, and our judgment enforceable. 
Yogi Berra was right: In law as in life, “It ain’t over ’til it’s over.”[2]
* 
* *
            
An appellate court’s mandate is the official order declaring to the 
district court, the parties, and all other interested persons that the court has 
closed the book on its review and is once-and-for-all finished. I can 
understand, therefore, why the court of appeals and Chemical Lime view the date 
of our mandate in Barshop as when the Authority 
and the Edwards Aquifer Authority Act became effective. Their position is hardly 
unreasonable. A decision from this Court, of course, is subject to a motion for 
rehearing, and can also be reconsidered on our own motion.[3]
            
The Authority says the date of the Barshop mandate is inappropriate because issuance of 
the mandate is merely the “ministerial act” of a court clerk.[4] I disagree. The mandate under our rules 
is not a mere ministerial postscript or duplicative reminder. Our rules require 
appellate courts to prepare a mandate, without which an appellate-court judgment 
cannot be enforced.[5]
            
Several statutes also tie the finality of appellate-court decisions to 
issuance of the mandate.[6] If the mandate served no meaningful 
purpose there would be no need to require one.
            
In addition, Texas Rule of Appellate Procedure 18.6 makes clear that 
appellate-court judgments in accelerated appeals, when time is of the essence, 
are not effective until the mandate issues. It would be peculiar to hold, as the 
Authority urges, that our judgment in an ordinary, unexpedited appeal takes effect instantly when the rules 
make plain that our judgment in an accelerated appeal[7] takes effect only “when the mandate is 
issued.”[8]
            
The parties make several arguments as to whether the trial court’s 
judgment was superseded while Barshop was on 
appeal, and whether the trial court was obliged to follow Barshop immediately upon its issuance. The Authority 
argues the State was exempt from the requirement of filing a supersedeas bond under Section 6.001 of the Civil Practice 
and Remedies Code, and therefore the trial court’s declaratory judgment was 
automatically suspended when the State perfected its appeal.[9]
            
The Authority also argues that the trial court’s injunction against 
enforcement of the Act dissolved immediately when we issued our decision in 
Barshop. The Authority cites Poole v. 
Giles, where we stated that an appellate “order dissolving a temporary 
injunction is effective immediately even though not final.”[10] It further cites Texas Workers’ 
Compensation Commission v. Garcia, in which we observed that even though the 
trial court and court of appeals had declared the Workers’ Compensation Act 
unconstitutional, they had not issued injunctions, and the Workers’ Compensation 
Commission had “accordingly continued implementing the Act notwithstanding the 
judgments of the courts below.”[11] In contrast, we stated in Barshop that “[b]ecause of 
the district court’s injunction,” the Act “has yet to be implemented,” but we 
concluded by holding that the injunction “is dissolved.”[12]
            
The court of appeals distinguished the trial court’s injunction and its 
declaratory judgment, reasoning that even if, immediately after our Barshop decision, “the district court could not 
enforce its injunction with contempt power . . . this does not mean that the 
supreme court’s judgment declaring the [Act] constitutional and reversing the 
district court’s contrary declaration also became effective at that time.”[13] Chemical Lime, too, contends that the 
Barshop judgment had no effect on the trial 
court’s declaratory judgment until our mandate issued, and that “[d]istinctions between injunctive and declaratory relief are 
irrelevant for this purpose.”
            
Chemical Lime further takes issue with the Authority’s contention that 
the State’s notice of appeal in Barshop 
automatically superseded the trial court’s judgment, characterizing this 
position as inconsistent with the position the State took in Barshop. In Barshop 
we noted the State’s position that it was before the Court “seeking 
authorization to implement the Act,” and that we should construe the Act “to 
merely require that the declarations be filed with the Authority six months 
after the eventual effective date of the statute.”[14] Chemical Lime argues that even if 
ordinarily the State was not required to post a supersedeas bond, the trial court in Barshop purported in its judgment to exercise its 
discretion “to deny supersedeas of this Judgment.” 
Chemical Lime contends the State chose not to challenge the order denying supersedeas and should not now be heard to argue that its 
notice of appeal in Barshop automatically 
superseded the judgment in that case.[15] Indeed, taking the Authority’s argument 
to its logical conclusion might mean the Act was effective when the State filed 
its notice of appeal in Barshop in 1995, and 
the six-month window for filing declarations of historical use expired before 
our opinion issued on June 28, 1996.
            
As the Court notes, these arguments regarding supersedeas and other issues are not dispositive,[16] and they obscure a key point. I do not 
believe the trial court or the parties would have acted in a manner inconsistent 
with our opinion in Barshop after it issued, 
regardless of whether, in some technical sense, the injunction immediately 
dissolved when we so stated in Barshop or the 
trial-court judgment was superseded at the time. I assuredly do not suggest 
parties may flout an appellate-court decision or judgment merely because the 
mandate has not yet issued.
            
Nevertheless, our Barshop decision was 
still not “final”[17] when issued in one important sense: 
We were still free to reconsider it and hold the Act unconstitutional or 
otherwise correct or modify our opinion or judgment. This authority of the 
issuing court to modify its own opinion or judgment ordinarily extends until the 
mandate issues, regardless of whether the judgment awards monetary, injunctive, 
or declaratory relief.
            
Although in exceptional circumstances we can recall the mandate,[18] the date of the mandate is ordinarily 
the appellate court’s formal and final order signaling it is finished with its 
review of the case and considers its decision final and its judgment 
enforceable.[19] Indeed, by correspondence the clerk 
advised the trial court and parties in Barshop 
as follows when the mandate issued: “The judgment of the Supreme Court of Texas 
is now final in the above referenced cause. As Rule 186, Tex. R. App. P., has 
been satisfied, we have issued the mandate as of 
today.” As the court of appeals aptly noted, the period between judgment and 
mandate affords the court “the opportunity to correct an appellate judgment 
before commanding its execution and enforcement in the lower court.”[20] An appellate court can issue a mandate 
earlier than the rules ordinarily prescribe if it has good cause for making its 
judgment more immediately final and enforceable.[21] Moreover, this Court has discretion to 
shorten the time for filing a motion for rehearing or even to disallow such a 
motion altogether.[22] Again, if opinions were immediately 
final for all purposes upon issuance, there would be no need for a mandate and 
no reason for courts sometimes to issue mandates early or to shorten the usual 
timetable for rehearing motions.
            
The date of the mandate, therefore, is generally the date the parties’ 
duties become fixed.[23] In this case, it was the date that all 
uncertainties regarding the Act’s constitutionality were finally and 
definitively dispelled.
            
Justice Brister points out many peculiarities in the law 
(complicated, it seems, by our inconsistent adherence to myriad rules and 
internal practices).[24] As between the opinion and the judgment, 
I agree with Justice Brister that 
the judgment is more “operative” — the judgment takes action; the opinion 
explains why. I also agree that “judgments should mean what they say,” but the 
question remains: Which judgment?[25] An appellate court can reconsider its 
judgment and the opinion on which it rests until the mandate issues, the date 
finality attaches.[26]
            
I appreciate Justice Brister’s 
point that the judgment merits instant respect. But if a judgment is operative 
for all purposes upon issuance, what exactly is the mandate of a mandate — why 
enact rules and statutes that tie finality and enforceability to something that 
amounts to Seinfeld-ian nothingness?[27] It seems odd that a decision would be 
fully effective yet neither final nor enforceable.[28]
            
I agree with the Court that our decision in Barshop itself decides today’s case. I agree, 
too, with Justice Brister that 
our decisions “can take effect whenever we say they do,”[29] but as a general default rule, I would 
treat the mandate as a more-than-clerical act. It is the judicial equivalent of 
“Yes, that’s my final answer” — the dispositive order 
concluding the appeal, declaring the judgment final and enforceable, and 
commanding that the judgment be “recognized, obeyed, and executed.” I trust the 
Court’s rulemaking process will focus its expertise on this important issue and 
deliver bright-line guidance going forward.
 
 
            
            
            
            
            
            
___________________________________
            
            
            
            
            
            
Don R. Willett
            
            
            
            
            
            
Justice
 
 
OPINION DELIVERED: June 
26, 2009






[1] Barshop v. Medina County Underground Water 
Conservation Dist., 925 S.W.2d 618 (Tex. 1996).

[2] Yogi Berra with Dave Kaplan, When You Come to a Fork in the 
Road, Take It! 88 (Hyperion 2001); see also Carlo DeVito, Yogi: The Life & Times of an American 
Original 285-286 (Triumph Books 2008) (explaining the offbeat etymology of 
this famous Yogi-ism); see also generally Stacy Obenhaus, It Ain’t Over ‘Til It’s Over: The Appellate Mandate in Texas Courts, 15 
The Appellate Advocate: State Bar of 
Texas Appellate Section Report 4, 8 (2003).

[3] As to the 
authority of a court to reissue an opinion on its own motion, see Raborn v. Davis, 795 S.W.2d 716, 717 (Tex. 
1990) (holding that the Court, after settlement and change in the law, “on its 
own motion, vacates its opinion and judgment”); Cocke v. Smith, 179 S.W.2d 958, 958 (Tex. 
1944) (holding, after granting mandamus petition, that “[u]pon further consideration of this matter by this court upon 
its own motion, we are of the opinion that we are without jurisdiction to grant 
such writ”); Prouty v. Musquiz, 58 S.W. 996, 996 (Tex. 1900) (holding that 
where the Court discovers error in its answer to certified question, “[i]t is proper that the mistake should be rectified, and 
therefore, of our own motion, we order that the specific answer given in our 
former opinion be set aside, and that in lieu thereof the following answer be 
certified . . . ”).

[4] The City of 
San Antonio likewise refers to the issuance of the mandate as “a purely 
ministerial procedure.”

[5] See 
Tex. R. App. 
P. 51.1 (providing that the appellate clerk 
must prepare a mandate and that the appellate court’s judgment must be enforced 
in the trial court once the trial court receives the mandate); 
Tex. R. App. P. 65.2 (providing that the trial court clerk 
must enforce the judgment of the Supreme Court upon receipt of the Court’s 
mandate); In re Ford Motor Co., 165 S.W.3d 315, 321 (Tex. 2005) (orig. 
proceeding) (noting that plaintiff has no right to recover damages from 
defendant “unless or until a mandate to that effect issues after trial, 
judgment, and possible appeals”).

[6] See 
Tex. Alco. 
Bev. Code § 61.34(c) (“If a license is issued on the basis of a district 
court judgment and that judgment is reversed on appeal, the mandate of the 
appellate court automatically invalidates the license and the applicant is 
entitled to a proportionate refund of fees for the unexpired portion of the 
license.”); Tex. Bus. Corp. Act art. 7.02 § F (providing that 
if judgment of revocation or dissolution of corporate certificate of authority 
is appealed, appellate court shall in certain circumstances “remand the case to 
the trial court with instructions to grant the corporation opportunity to cure 
such defaults, such cure to be accomplished within such time after issuance of 
the mandate as the appellate court shall determine but in no event more than 
sixty (60) days thereafter”); Tex. Gov’t 
Code § 30.00142(d) (providing that appointment of special appellate judge 
“automatically terminates at the time the mandate or mandates issue in the case 
he was appointed to hear”).

[7] See 
Tex. R. App. P. 
28.1.

[8] Tex. R. App. P. 18.6.

[9] The State 
makes this argument as well, contending that its 
“notice of appeal in Barshop automatically 
superseded the trial court’s judgment.”

[10] Poole v. 
Giles, 248 S.W.2d 464, 465 (Tex. 1952).

[11] Tex. 
Workers’ Comp. Comm’n v. Garcia, 893 S.W.2d 504, 
517 (Tex. 1995).

[12] Barshop v. Medina County Underground Water 
Conservation Dist., 925 S.W.2d 618, 625, 638 (Tex. 1996).

[13] 212 S.W.3d at 694.

[14] Barshop, 925 S.W.2d at 628 (emphasis 
added).

[15] The State 
contends it had concluded in the Barshop appeal 
that “it would make little sense to implement the Act while the direct appeal 
was pending,” and that it voluntarily chose to delay implementation of the 
permit program, but that the trial court in Barshop nevertheless erred in reasoning that it could 
deny supersedeas of its judgment. The State argues 
that its notice of appeal in Barshop 
automatically superseded the trial court’s judgment and that its subsequent 
conduct in that appeal did not effect a waiver of the 
automatic suspension of the judgment, issues the Court need not resolve 
today.

[16] __ S.W.3d at 
__ n.45. As the Authority argues in its briefing, “The effective date of the Act 
should not turn on a complex question of law regarding whether and in what 
circumstances supersedeas is automatic under a tangled 
web of facts regarding supersedeas at the trial court 
in the Barshop case (which are outside the 
record in this case).”

[17] I caution 
that “final” for purposes of describing a judgment has several meanings, and 
can, depending on the context, refer to finality for purposes of determining (1) 
whether the judgment is appealable, (2) whether the 
time for altering the judgment has expired, or (3) whether the judgment operates 
as res judicata. See 
Sultan v. Mathew, 178 S.W.3d 747, 751 (Tex. 
2005).

[18] See 
Tex. R. App. P. 
18.7.

[19] See In re 
Long, 984 S.W.2d 623, 626 (Tex. 1999) (orig. proceeding) (per curiam) (noting that appeal was not “exhausted” or “final” 
until court of appeals issued its mandate); Traders & Gen. Ins. Co. v. 
Hicks Rubber Co., 169 S.W.2d 142, 145 (Tex. 1943) (“After the judgment in 
the J.W. Harper suit became final, mandate was duly issued and returned to the 
district court.”); see also Celotex Corp. v. 
Edwards, 514 U.S. 300, 302 (1995) (“The United States Court of Appeals for 
the Fifth Circuit affirmed, issuing its mandate on October 12, 1990, and thus 
rendering ‘final’ respondents’ judgment against Celotex.”); Charpentier 
v. Ortco Contractors, 480 F.3d 710, 713 (5th Cir. 
2007) (“Before our mandate issues, we have the power to alter or modify our 
judgment. Accordingly, our decision is not final until we issue a mandate.” 
(footnotes omitted)); In re City of Cresson, 245 
S.W.3d 72, 74 (Tex. App.—Fort Worth 2008, orig. proceeding) (“It is true that 
this court’s judgment is not enforceable in the trial court until it is final 
and mandate issues.”).
            
Indeed, it is not uncommon for parties to jointly request that the Court 
expedite issuance of the mandate so the parties can complete a settlement and 
ask the trial court to issue an agreed dismissal order. See Tex. R. App. P. 18.1(c) (allowing for 
early issuance of the mandate “if the parties so agree, or for good cause on the 
motion of a party”).

[20] 212 S.W.3d at 695.

[21] See 
Tex. R. App. P. 18.1(c). The United States 
Supreme Court has on occasion followed a similar procedure. See Bush v. 
Gore, 531 U.S. 98, 111 (2000) (“Pursuant to this Court’s Rule 45.2, the 
Clerk is directed to issue the mandate in this case forthwith.”); United 
States v. Nixon, 418 U.S. 683, 716 (1974) (“Since this matter came before 
the Court during the pendency of a criminal 
prosecution, and on representations that time is of the essence, the mandate 
shall issue forthwith.”).

[22] Tex. R. App. P. 64.1.

[23] See 
Fed. R. App. P. 41(c) 
advisory committee’s note (1998 amendments) (“A court of appeals’ judgment or 
order is not final until issuance of the mandate; at that time the parties’ 
obligations become fixed.”).

[24] I do question 
the persuasiveness of some of Justice 
Brister’s comparisons, such as his 
references to mandamus proceedings, “which we decide by ‘orders’ rather than 
‘judgments.’” __ S.W.3d at __ (Brister, J., concurring). The fact that we don’t 
issue mandates in mandamus cases — typically involving interlocutory, 
conditional, emergency rulings directed to the lower court only and not the 
parties — seems unrelated to the question of the mandate’s effect in a case 
involving a final, unconditional judgment. (In fairness, I also make some 
reference to interlocutory appeals and mandamus law.) Our settled practice is to 
grant writs of mandamus only conditionally, with our final sentence usually 
reading something like this: “We are confident the trial court will comply, and 
our writ will issue only if it does not.” In re 
Schmitz, __ S.W.3d __ (Tex. 2009). So while a writ 
will issue when necessary to enforce our decision and require the respondent to 
take action — similar to a mandate in an appeal — we rarely have to do 
so.
            
I also cannot completely agree with Justice Brister’s assertion that no mandate 
issues when we deny a petition for review. __ S.W.3d at __ (Brister, J., 
concurring). If we deny a petition, the court of appeals then issues a mandate 
to enforce its judgment. See Tex. 
R. App. P. 18.1(a)(2).

[25] Justice Brister states, “First of all, 
we should start with the principle that cases are decided by judgments, not 
mandates. Judgments are rendered by the court, and a majority of the court must 
agree to them. Mandates, by contrast, are drafted and signed by the clerk; 
judges rarely even see them.” __ S.W.3d at __ (Brister, J., concurring) 
(footnotes omitted). Until this case, I had certainly never seen a mandate. But 
I have a slightly different view, which may be more stylistic than substantive. 
While judgments are in a sense more “operative” than opinions, I think cases are 
decided — that is to say reasoned — by opinions, not judgments. The 
judgment, like the mandate, is a separate document that sets forth the court’s 
bottom-line decision and addresses the payment of costs. And like mandates, 
judgments are drafted by the Court’s staff and usually not reviewed by judges. 
Our judgments, for example, are not signed by anyone, either a judge or anyone 
in the clerk’s office. But the fact that the Court designates a task to its 
staff doesn’t mean the action taken is not an official act of the Court, nor 
does it diminish its significance. Our mandates state, “[W]e command you 
to observe the order of our said Supreme Court in the behalf, and in all things 
to have recognized, obeyed, and executed.” (emphasis in 
original). And by its terms, the mandate is issued “BY ORDER OF THE SUPREME 
COURT OF THE STATE OF TEXAS.”

[26] Justice Brister contends the mandate is 
an imperfect proxy for finality because “mandates issue 10 days after our 
judgment is final” — so why postpone the effective date for ten days if the 
judgment is final? __ S.W.3d at __ (Brister, J., concurring) (footnote omitted). 
This ten-day period sometimes applies, but not always, and there is a sound 
practical reason for it. When the Court denies rehearing, the mandate issues 
immediately because the judgment is final. There is no second motion for 
rehearing. Tex. R. App. P. 64.4. 
When no rehearing is sought, the mandate issues ten days after the deadline for 
filing a motion for rehearing or seeking an extension of time to file such a 
motion — that is, forty days after judgment. See Tex. R. App. P. 64.1 (“[a] motion for 
rehearing may be filed . . . within 15 days from the date when the Court renders 
judgment”); Tex. R. App. P. 64.5 
(“[t]he Court may extend the time to file a motion for rehearing . . . if a 
motion . . . is filed . . . no later than 15 days after the last date for filing 
a motion for rehearing”); Tex. R. App. 
P. 18.1(b) (the clerk must issue the mandate “[t]en 
days after the time has expired for filing a motion to extend time to 
file a motion for rehearing”). The ten-day postponement is justified by the 
so-called mailbox rule, which provides that if a motion is received within ten 
days of the filing deadline it is considered timely filed if it was sent to the 
proper clerk by U.S. mail in a properly addressed envelope and deposited in the 
mail on or before the last day of filing. See Tex. R. App. P. 9.2(b). Since the Court has 
no way of knowing whether a motion for rehearing or an extension of time to file 
a motion for rehearing will be timely filed until ten days after the deadline, 
we simply factor in the mailbox rule and sit tight.

[27] Not that 
there’s anything wrong with that. As a matter of fact — and law — there is 
something wrong with that.

[28] See 
Tex. R. App. P. 51, 65.

[29] __ S.W.3d at 
__ (Brister, J., concurring). In Turner v. Gen. Motors Corp., 584 S.W.2d 
844, 851 (Tex. 1979), we stated what I believe is a sensible general rule, 
deeming “this opinion to be effective . . . after the date on which our judgment 
herein becomes final,” which we clarified in a later case was “the date of the 
overruling of the last motion for rehearing,” Acord 
v. Gen. Motors Corp., 669 S.W.2d 111, 115 (Tex. 1984). That date happens to be when the mandate issues. 
Interestingly, we decided Acord just 
seventeen days after amending a rule making it clear that a court’s judgment 
regarding an interlocutory order did not take effect until the mandate issued. 
Steven McConnico & Daniel W. Bishop II, 
Practicing Law with the 1984 Rules: Texas Rules of Civil Procedure Amendments 
Effective April 1, 1984, 36 Baylor 
L. Rev. 73, 120-21 (1984).